UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

CHARLOTTE THOMAS,       )  1:14CV0284
     ex rel. T.E.,          )
                            )
     Plaintiff         )
                            )
     v.              )  MAG. JUDGE KENNETH S. McHARGH
                            )
COMMISSIONER OF SOCIAL   )
     SECURITY ADMIN.,     )
                            )
     Defendant       )  MEMORANDUM
                            )  AND ORDER

McHARGH, MAG. JUDGE

The issue before the court is whether the final decision of the Commissioner of Social Security ("the Commissioner") denying the application of Plaintiff Charlotte Thomas (on behalf of her minor son, T.E.) for Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C § 1381 *et seq*., is supported by substantial evidence and, therefore, conclusive.

For the following reasons, the court finds that the decision is supported by substantial evidence, and affirms the final decision of the Commissioner.

I.  PROCEDURAL HISTORY

On November 17, 2010, Plaintiff Charlotte Thomas ("Thomas") applied for Supplemental Security Income benefits on behalf of her minor son, T.E., with an

alleged disability onset date of February 1, 2003.  (Doc. 13, Tr., at 21, 121-126.)

Thomas alleged that T.E.'s disabling conditions were "severe asthma" and "learning

disability."  (Tr., at 148.)  The application noted T.E.'s ability to progress in learning

was limited, in part because he is dyslexic.  (Tr., at 136.)  Also, T.E. has severe

asthma, so trouble with running and playing.  (Tr., at 137.)  His impairment(s)

affect his behavior with other people, because he is "a real hyper child.  He is not

able to sit still and his attention span is very short."  (Tr., at 138.)

Thomas's application was denied initially and upon reconsideration.  (Tr., at

81-83, 87-89.)  On August 29, 2011, Thomas filed a written request for a hearing

before an administrative law judge.  (Tr., at 90-92.)

An Administrative Law Judge ("the ALJ") convened a videoconference

hearing on May 22, 2012, to hear T.E.'s case.  (Tr., at 41-57.)  Thomas and T.E. were

not represented by counsel at the hearing.[1]  (Tr., at 43-44.)

Social Security Administration regulations require an ALJ to follow a three-

step sequential analysis in making a determination as to  whether a person under

the age of 18 is disabled.  *See* 20 C.F.R. § 416.924(a).  On September 14, 2012, the

ALJ issued his decision applying the three-step sequential analysis to determine

whether T.E., as a person under the age of 18, was disabled.  (Tr., at 22.)

Based on his review, the ALJ concluded T.E. was not disabled.  (Tr., at 21,

37.)  Following the issuance of this ruling, Thomas sought review of the ALJ's

---

[1] Thomas obtained counsel shortly after the ALJ's decision was released.  (Doc. 13, tr., at 17.)

decision from the Appeals Council.  (Tr., at 16.)  However, the council denied

Thomas's request for review, thus rendering the ALJ's decision the final decision of

the Commissioner.  (Tr., at 1-3.)  Thomas now seeks judicial review of the

Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

Thomas briefs two issues:

1.  Whether substantial evidence supports the Administrative Law
Judge's findings of less than marked impairments in three of the
domains of functioning.

2.  Whether the evidence submitted after the hearing is new and
material evidence warranting remand.

(Doc. 16, at 1.)


## II.  PERSONAL BACKGROUND INFORMATION

T.E. was born on January 30, 2003, and was seven years old as of his

application date.  (Tr., at 24, 121.)  Accordingly, T.E. was at all times considered a

"school age child" for Social Security purposes.  *See* 20 C.F.R. § 416.926a(g)(2)).

Relevant evidence in the record includes a Teacher Questionnaire, completed

by Michelle Kelly, T.E.'s second grade teacher, on January 18, 2011.  In the section

concerning attending and completing tasks, Ms. Kelly noted that T.E. had problems

functioning in this domain, and indicated several problem areas.  However, in

rating the problems, Ms. Kelly did not indicate that any problem was a serious

problem.  (Tr., at 154, 156.)  In the section concerning interacting and relating to

others, Ms. Kelly noted two slight problem areas, and no serious problems.  (Tr., at

3

157.)  In the section regarding "caring for himself," Ms. Kelly observed no problems in this domain.

A mental health assessment of T.E. was completed by Ruthie Seals, MA, LSW, at Beech Brook in February 2011.  Ms. Seals noted a sad affect, preoccupations in his thought content, and risks arising from anger issues.  (Tr., at 263, 272-275.)  Ms. Seals' primary diagnosis was Attention-Deficit Hyperactivity Disorder, Predominate Inattentive Type.  He was also diagnosed with generalized anxiety disorder, and oppositional/defiant disorder, with a current GAF of 50.  (Tr., at 275.)

Shortly after that, a psychological evaluation was conducted by psychologist David V. House, Ph.D., on March 7, 2011.  (Tr., at 258-262.)  During the examination, it was noted that T.E.'s concentration and attention, along with pace persistence and task completion, along with his intellectual skills, appeared to be below average functioning for a child of his age.  Social emotional and behavior patterns also appeared to be below average.  Dr. House diagnosed T.E. with Major Depression, severe with psychotic features; Disruptive Behavior Disorder; and Obsessive Compulsive Disorder.  (Tr., at 261.)

A childhood disability evaluation was conducted, and signed by psychologist Mel Zwissler, Ph.D., on March 31, 2011, and pediatrician John L. Mormol, M.D., on April 5, 2011.  The reviewing sources determined that in the domains of attending and completing tasks, interacting and relating to others, and caring for self, T.E.'s limitations were "Less Than Marked."  (Tr., at 65-66.)

4

A second childhood disability evaluation was conducted, and signed by psychologist Katherine Fernandez, Psy.D., on August 16, 2011, and pediatrician Janice Taylor, M.D., on August 19, 2011.  These reviewing sources as well determined that in the domains of attending and completing tasks, interacting and relating to others, and caring for self, T.E.'s limitations were "Less Than Marked." (Tr., at 75-76.)

On September 16, 2011, his third grade teacher, Aimee Knoyer, wrote a note expressing major concerns regarding his attention span and work habits.  Ms. Knoyer also mentioned that T.E. had a hard time keeping his hands to himself, and used inappropriate language.  (Tr., at 196.)

An ISP review was conducted by Alison Aarons, at Beech Brook, on March 15, 2012.  (Tr., at 457-465.)  Ms. Aarons noted that there had been was some difficulty in transitioning to a new caseworker, and T.E. continued to have problems managing his anger.  (Tr., at 461-462.)  However, she noted his medication was helping him manage his impulsive behaviors better.  *Id.* at 461.

Helen Kleinman, school psychologist, completed a confidential case report on T.E. on May 3, 2012.  (Tr., at 409-414.)  T.E. was referred to Ms. Kleinman because of academic and behavioral concerns.  (Tr., at 409.)  Behavior problems included aggression toward other children.  (Tr., at 410.)  T.E. reported that he did not always take his medication for ADHD, which led to increased problems.  (Tr., at 411.)  Ms. Kleinman's recommendations included a behavior contract, increased parental involvement, and academic accommodations.  (Tr., at 414.)

5

On his May 8, 2012, student progress report, his teacher Ms. Knoyer reported that T.E.'s behavior was very inconsistent, but that she was very concerned with recent threats he had been making to his classmates.  (Tr., at 424.)  On May 21, the school administration followed up with a note expressing similar concerns.  (Tr., at 425.)

The hearing before the ALJ took place on May 22, 2012.  (Tr., at 41-57.)  At the hearing, the ALJ questioned T.E. and his mother, who were unrepresented. T.E. testified that he keeps getting suspended because he gets angry because "this boy keeps messing with me."  (Tr., at 46.)  He testified he was involved with his church, and that he had two particular friends that he played with on the playground, where they did their secret handshakes.  (Tr., at 50.)

The mother testified he was currently suspended as of the hearing date, and that he had been doing well in school, but had gotten behind in his schoolwork.  She noted that the school was attempting to accommodate him, but he had been suspended numerous times due to his anger issues.  (Tr., at 51-52.)  They had been working with a caseworker at Beech Brook, plus their doctor was trying to fine tune his medication to help control his anger.  (Tr., at 55.)  T.E. was also taking medication which has helped him stop picking at himself as much.  (Tr., at 53-54.)

### III.  ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law:

1.  The claimant was born on January 30, 2003.  Therefore, he was a school-age child on November 17, 2010, the date the application was filed, and is currently a school-age child (20 CFR 416.926a(g)(2)).

2. The claimant has not engaged in substantial gainful activity since November 17, 2010, the application date (20 CFR 416.924(b) and 416.971 et seq.).

3.  The claimant has the following severe impairments:  attention deficit hyperactivity disorder and mood disorder (20 CFR 416.924(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925, and 416.926).

5. The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926a).

6.  The claimant has not been disabled, as defined in the Social Security Act, since November 17, 2010, the date the application was filed (20 CFR 416.924(a)).

(Doc. 13, Tr., at 24-25, 37.)

In finding that T.E. was not disabled, the ALJ determined that T.E. has less than marked limitation in acquiring and using information, attending and completing tasks, interacting and relating with others, caring for himself, and health and physical well-being.  (Tr., at 29, 31, 33, 35, and 36.)  The ALJ found that T.E. has no limitation in moving about and manipulating objects.  (Tr., at 34.)  The ALJ thus found that T.E. does not have an impairment, or combination of impairments that result in either "marked" limitations in two domains of functioning, or "extreme" limitation in one domain of functioning.  (Tr., at 37.)

## IV.  DISABILITY STANDARD

A child claimant, under the age of 18, is entitled to receive Supplemental Security Income benefits only when he establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  As in any Social Security disability case, the claimant bears the ultimate burden of proof of disability.  20 C.F.R. § 416.912(a); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001).

Social Security Administration regulations require an ALJ to follow a three-step sequential analysis in making a determination as to whether a person under the age of 18 is disabled.  *See* 20 C.F.R. § 416.924(a).  First, the ALJ determines whether the minor-claimant is engaging in substantial gainful activity ("SGA").  If the claimant is engaging in SGA, he is not disabled, regardless of his medical condition, age, education, or work experience. If the claimant is not engaging in SGA, the analysis proceeds to step two.  20 C.F.R. §§ 416.924(b); 416.972.

Second, the ALJ must determine whether the minor-claimant has a medically determinable impairment, or a combination of impairments, that is "severe."  A medically determinable impairment, or a combination of impairments, is not "severe" if it is a slight abnormality, or a combination of slight abnormalities, that causes no more than minimal functional limitations.  If the claimant does not have a severe impairment, he is not disabled.  If he does, the analysis proceeds to the third step.  20 C.F.R. §§ 416.924(a), (c).

Third, the ALJ must determine whether the claimant has an impairment, or combination of impairments, that meets or medically equals the severity of a

8

listing, or that functionally equals the listings.  In doing so, the ALJ must consider the combined effect of all medically determinable impairments, including those that are not severe.  If the claimant has an impairment, or combination of impairments, that meets or medically equals the severity of a listing, or that functionally equals the listings, and it has lasted or is expected to last for a continuous period of at least 12 months, he is presumed to be disabled.  If not, the claimant is not disabled.  20 C.F.R. §§ 416.923, 416.924(d), 416.924a(b)(4), and 416.926a(a) and (c).

In determining whether an impairment or combination of impairments functionally equals a listing, the ALJ must assess the claimant's functioning in six areas ("domains"):  (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for one's self, and (6) health and physical well-being.  In making this assessment, the ALJ must compare how appropriately, effectively and independently the claimant performs activities compared to the performance of other children of the same age who do not have impairments.  To functionally equal the listings, the claimant's impairment(s) must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain.  20 C.F.R. §§ 416.926a(b)(1) and (d).

In assessing whether the claimant has "marked" or "extreme" limitations, the ALJ must consider the functional limitations from all medically determinable impairments, including any impairments that are not severe (20 C.F.R. § 416.926a(a)).  Consideration must also be given to the interactive and cumulative

effects of the claimant's impairment(s) in any affected domain (20 C.F.R. §
416.926a(c)).

A child has a "marked" limitation in a domain when his impairment(s)
"interferes seriously" with the ability to independently initiate, sustain, or complete
activities.  20 C.F.R. § 416.926a(e)(2).  A child has an "extreme" limitation in a
domain when his impairment(s) interferes "very seriously" with the ability to
independently initiate, sustain, or complete activities.  20 C.F.R. § 416.926a(e)(3).
A child's day-to-day functioning may be seriously, or very seriously, limited even if
the impairment(s) limit only one activity, or when the interactive and cumulative
effect of the impairment(s) limit several activities.

## V.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a
determination of whether the ALJ applied the correct legal standards, and whether
the findings of the ALJ are supported by substantial evidence.  *Blakley v. Comm'r of
Social Security*, 581 F.3d 399, 405 (6th Cir. 2009)*; Richardson v. Perales*, 402 U.S.
389, 401 (1971).  "Substantial evidence" has been defined as more than a scintilla of
evidence but less than a preponderance of the evidence.  *See Kirk v. Sec'y of Health
& Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is
of such a nature that a reasonable mind might accept it as adequate support for the

Commissioner's final benefits determination, that determination must be affirmed. *Id.*

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)*; Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983) (per curiam).  This court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility.  *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  However, the court may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision.  *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## VI.  ANALYSIS

### A.  Marked Impairments

Thomas first challenges the ALJ's decision on this basis:

> Whether substantial evidence supports the Administrative Law
> Judge's findings of less than marked impairments in three of the
> domains of functioning.

(Doc. 16, at 1, 12-16.)  Thomas contends that the evidentiary record does not support a finding of less than marked limitations in the domains of attending and completing tasks, interacting and relating to others, and caring for self.  (Doc. 16, at

16.)  Thomas argues that the ALJ "failed to include evidence which would have
supported marked impairments" in those three domains.  (Doc. 16, at 13.)

### 1. Attending and Completing Tasks

In his decision, the ALJ noted that the domain of attending and completing
tasks,

> . . . considers how well a child is able to focus and maintain attention,
> and how well he is able to begin, carry through, and finish activities,
> including the mental pace at which he performs activities and the ease
> of changing activities.  Attending and completing tasks also refers to a
> child's ability to avoid impulsive thinking and his ability to prioritize
> competing tasks and manage his time.

(Doc. 13, tr., at 30, citing 20 C.F.R. § 416.926a(h) and SSR 09-4p.)  For example, a
school-age child should be able to focus his attention in a variety of situations to
follow directions, remember and organize his schoolwork, and complete
assignments.  He should be able to change activities without distraction, stay on
task and in place when appropriate, and sustain attention in order to participate in
group sports, read by himself, and complete family chores.  (Tr., at 31, citing 20
C.F.R. § 416.926a(h)(2)(iv) and SSR 09-4p.)

The ALJ reviewed relevant evidence in the record pertaining to this domain,
including a confidential report of a psychological evaluation, conducted by
psychologist David V. House, Ph.D., on March 7, 2011 (tr., at 31, citing tr., at 260);
a Teacher Questionnaire, completed by Michelle Kelly, his second grade teacher, on
January 18, 2011 (tr., at 31, citing tr., at 155-156); a note from Aimee Knoyer, his
third grade teacher, dated September 16, 2011, as well as a May 21, 2012, letter

12

from his school expressing Ms. Knoyer's concerns (tr., at 31, citing tr., at 196, 424-425); a February 2011 mental health assessment completed by Ruthie Seals, MA, LSW, at Beech Brook (tr., at 32, citing tr., at 273, 275); a March 15, 2012, ISP review conducted by Alison Aarons, at Beech Brook (tr., at 32, citing tr., at 462); and, a May 3, 2012, confidential case report by Helen Kleinman, school psychologist (tr., at 32, citing tr., at 414).  His review of the evidence led the ALJ to conclude that "while the claimant has some difficulties in this area of functioning, those difficulties are less than marked."  (Tr., at 32.)

Thomas revisits much of this same evidence, with an emphasis on different aspects of the evidence, which she argues should support a finding of a marked impairment.  (Doc. 16, at 13-14.)  The Commissioner responds that the ALJ considered evidence from the claimant's teachers and school psychologist, and pointed out that the ALJ relied on state agency reviewing medical consultants, to which he assigned the "greatest weight."  (Doc. 17, at 15; see doc. 13, tr., at 28.)

The ALJ noted that the state agency consultants are disability experts (SSR 96-6p), who had determined that T.E. has less than marked limitations in attending and completing tasks, interacting and relating to others, and caring for self.  (Doc. 13, tr., at 28; see also tr., at 65-66, 75-76.)  Thomas does not challenge the weight assigned to medical consultants' opinion, but argues that the ALJ "failed to include evidence which would have supported marked impairments" in the three contested domains.  (Doc. 16, at 13.)

13

While the ALJ must consider all the evidence in the record, there is no requirement that the ALJ discuss every single piece of evidence. *See, e.g.*, *Atkinson v. Astrue*, No. 09-1369, 2010 WL 2977593, at *3 (10th Cir. July 29, 2010) (citing *Clifton v. Chater*, 79 F.3d 1007, 1009-1010 (10th Cir. 1996) (while ALJ must consider all evidence in record, nothing requires discussion of every piece of evidence)); *Thacker v. Commissioner*, No. 02-6138, 2004 WL 1153680, at *3 (6th Cir. May 21, 2004) (ALJ need not discuss every piece of evidence in the record). "Although required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Simons v. Barnhart*, No. 04-5021, 2004 WL 2633448, at *6 (6th Cir. Nov. 18, 2004) (quoting *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)).

In any event, the court finds that the ALJ's finding on the domain of attending and completing tasks is based on substantial evidence in the record, as discussed above. *See generally* tr., at 31-32.  Although Thomas argues that substantial evidence does not support the ALJ's determination, she supports her argument by pointing to evidence that would support a contrary conclusion.  The Commissioner's determination must stand if supported by substantial evidence, regardless of whether some evidence might support another conclusion.  *See Kidd v. Commissioner*, No. 99-6481, 2001 WL 345787, at *3 (6th Cir. Mar. 27, 2001); *Martin ex rel. Martin v. Chater*, 91 F.3d 144, 1996 WL 428403, at *4 (6th Cir. 1996)

14

(TABLE, text in WESTLAW) (per curiam); *Mullen*, 800 F.2d at 545*; Kinsella*, 708 F.2d at 1059.

### 2.  Interacting and Relating to Others

Concerning the domain of interacting and relating to others, the ALJ's decision noted that this domain,

> . . . considers how well a child is able to initiate and sustain emotional connections with others, develop and use the language of community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others.  Interacting and relating with others relates to all aspects of social interaction at home, at school, and in the community.  Because communication is essential to both interacting and relating, this domain considers the speech and language skills children need to speak intelligibly and to understand and use the language of their community.

(Doc. 13, tr., at 32, citing 20 C.F.R. § 416.926a(i) and SSR 09-5p.)  For example, a school-age child should be able to develop lasting friendships with children who are of the same age, and should begin to understand how to work in groups to create projects and solve problems.  The child should have an increasing ability to understand another's point of view, and to tolerate differences.  (Doc. 13, tr., at 32, citing 20 C.F.R. § 416.926a(i)(2)(iv) and SSR 09-5p.)

The ALJ noted that there were conflicting reports regarding T.E.'s abilities to interact with others.  (Doc. 13, tr., at 33.)  The ALJ reviewed T.E.'s testimony at the hearing, and evidence provided by his mother.  (Tr., at 33, citing tr., at 138, 259.)

The ALJ reviewed additional evidence in the record pertaining to this domain, including a Teacher Questionnaire, completed by Ms. Kelly, second grade teacher, on January 18, 2011 (tr., at 33, citing tr., at 157); a note from Ms.  Knoyer,

third grade teacher, dated September 16, 2011 (tr., at 33, citing tr., at 196); a May 21, 2012, letter from his school expressing Ms. Knoyer's concerns (tr., at 33, citing tr., at 425); a May 3, 2012, confidential case report by school psychologist Kleinman, (tr., at 33, citing tr., at 414); a May 3, 2012, letter from Ms. Aarons, of Beech Brook (tr., at 33, citing tr., at 197); and, a March 15, 2012, ISP review conducted by Ms. Aarons (tr., at 33-34, citing tr., at 458, 460-461). The ALJ's review of the evidence led him to the conclusion that "based on the reported progression of behaviors but non-compliance with the recommended treatment and switching caseworkers, the evidence establishes that while the claimant has some difficulties in this area of functioning, those difficulties are less than marked."  (Tr., at 34.)

The court finds that the ALJ's finding on the domain of interacting and relating with others is based on substantial evidence in the record, as discussed above. *See generally* tr., at 32-34.  Thomas again supports her  argument by pointing to evidence that would support a contrary conclusion.  (Doc. 16, at 14-15.) It is not the role of this court to resolve conflicts in the evidence. *See Garner*, 745 F.2d at 387.  The Commissioner's determination must stand if supported by substantial evidence, regardless of whether some evidence might support another conclusion. *See Kidd*, 2001 WL 345787, at *3; *Martin*, 1996 WL 428403, at *4; *Mullen*, 800 F.2d at 545*; Kinsella*, 708 F.2d at 1059.

### 3.  Caring for Self

As to the domain of caring for self, the ALJ's decision noted that this domain,

> . . . considers how well a child maintains a healthy emotional and
> physical state, including how well a child satisfies his physical and
> emotional wants and needs in appropriate ways.  This includes how
> the child copes with stress and changes in the environment and how
> well the child takes care of his own health, possessions and living area.

(Doc. 13, tr., at 35, citing 20 C.F.R. § 416.926a(k) and SSR 09-7p.)  For example, a

school-age child should be independent in most day-to-day activities (dressing,

bathing, etc.), although he may still need reminding sometime, and should begin to

recognize that he is competent in doing some activities, but has difficulty doing

others.  The child should begin to develop understanding of right and wrong, and

what is acceptable and unacceptable behavior.  (Doc. 13, tr., at 35, citing 20 C.F.R. §

416.926a(k)(2)(iv) and SSR 09-7p.)

The ALJ reviewed evidence provided by T.E.'s mother in the November 29,

2010, function report.  (Tr., at 35, citing tr., at 139.)  The ALJ considered

statements made by the mother to Dr. House at the March 7, 2011, psychological

evaluation.  (Tr., at 35-36, citing tr., at 260.) The ALJ also referred to responses by

Ms. Kelly, his second grade teacher, on the Teacher Questionnaire, completed on

January 18, 2011, in which she reported that she had observed no problems in this

domain, and that his functioning appeared age-appropriate.  (tr., at 36, citing tr., at

159.)

The ALJ's review of the evidence led him to conclude that "the evidence as a

whole suggests that while the claimant may have minor difficulties with self-care,

those limitations are less than marked."  (Tr., at 36.)  Thomas points to evidence of

T.E.'s anger, temper tantrums, and other behavior which she contends should lead

17

to a conclusion that T.E. had marked limitations in this domain.  (Doc. 16, at 15-16.)

It is clear from the ALJ's overall discussion of the evidence in the record that the ALJ considered the evidence pointed to by Thomas.  *See, e.g.*, tr., at 26-28, 35-36.  There is certainly evidence in the record which could support a conclusion other than that reached by the ALJ.  However, that is not this court's role.  As stated earlier, the Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion.  *See Kidd*, 2001 WL 345787, at *3; *Martin*, 1996 WL 428403, at *4; *Mullen*, 800 F.2d at 545; *Kinsella*, 708 F.2d at 1059.  This court cannot try the case de novo.  *See Garner*, 745 F.2d at 387.

The ALJ's determinations that T.E. has less than marked limitations in the domains of attending and completing tasks, interacting and relating to others, and caring for self, are supported by substantial evidence.  The court finds that the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final determination.  Thus, the Commissioner's decision is affirmed, as it relates to the three contested domains discussed above.  *Blakley*, 581 F.3d at 405; *Kirk*, 667 F.2d at 535.

### B.  Post-Hearing Evidence

Thomas also briefs a second issue:  "Whether the evidence submitted after the hearing is new and  material evidence warranting remand."  (Doc. 16, at 1.)  As mentioned above, the hearing before the ALJ took place on May 22, 2012.  (Doc. 13, tr., at 41-57.)  The ALJ's decision was issued on September 14, 2012.  (Tr., at 18.)

Thomas argues that remand for consideration of new and material evidence is appropriate if the evidence relates to claimant's condition at the time of the administrative proceeding, and if the claimant shows good cause for failing to submit the evidence during the administrative proceedings.  (Doc. 16, at 16, citing *Sizemore v. Secretary, HHS*, 865 F.2d 709, 711-712 (6th Cir. 1988).)  The claimant must demonstrate that there was a reasonable probability that the Commissioner would have reached a different disposition of the claim if presented with the new evidence.  (Doc. 16, at 16-17, citing *Carroll v. Califano*, 619 F.2d 1157, 1162 (6th Cir. 1980), and *Sizemore*, 865 F.2d at 711.)

The evidence in question is (1) a questionnaire completed by T.E.'s fourth grade teacher, Rachel Slapnicker, on December 12, 2012 (tr., at 202-204); (2) an Evaluation Team Report, completed on November 13, 2012, primarily by team chairperson, Jennifer McCue, M.Ed., NCSP (tr., at 214-230); (3) a September 11, 2012, ISP review conducted by Ms. Aarons of Beech Brook (tr., at 478-485); (4) a Pharmacological Management Progress Note, from Beech Brook, dated November 7, 2012 (tr., at 487); and, (5) a questionnaire on Medical and Functional Equivalence, completed by behavioral therapist Aminah Moore, LISW, on December 18, 2012 (tr.,

at 495-498).  (Doc. 16, at 17-18, citing tr., at 202, 204, 216, 223, 227-228, 208, 210, 481, 487, 497.)  All of the evidence in question, then, is dated after the date of the hearing, and all but the ISP review were dated after the ALJ's decision was issued.

Thomas states that "this evidence does address T.E.'s condition as of the time of the hearing due to the close proximity to the hearing date, and no evidence of significant decompensation during that time period."  Thomas does not explicitly address "good cause" for failing to submit the evidence earlier, other than to note that Thomas was unrepresented at the time of the hearing.  (Doc. 16, at 19.)

The Commissioner responds that the evidence, which was supplied to the Appeals Council after the hearing, may not be considered for purposes of determining whether substantial evidence supports the ALJ's decision, because the court's review is confined to evidence that was available to the ALJ.  (Doc. 17, at 19, citing *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993).)  The Commissioner contends that evidence submitted for the first time to the Appeals Council may be considered only for purposes of determining whether remand is appropriate under the sixth sentence of 42 U.S.C. § 405(g).  The Commissioner asserts that a reviewing court may remand under that sentence only if the party seeking remand proves that the additional evidence is new and material, and that he had good cause of his failure to incorporate it into the record during the administrative hearing. (Doc. 17, at 19, citing 42 U.S.C. § 405(g); *Oliver v. Secretary, HHS*, 804 F.2d 964, 966 (6th Cir. 1986).)

20

The Commissioner argues that Thomas has not established that good cause exists for failing to have submitted the post-hearing evidence to the ALJ. The Commissioner notes that the Sixth Circuit has rejected the argument "that good cause exists simply by virtue of the fact that the post-hearing evidence did not exist prior to the hearing." (Doc. 17, at 20, citing *Oliver*, 804 F.2d at 966.)

For purposes of judicial review, the "record" is "the evidence upon which the findings and decision complained of are based." *Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001) (quoting 42 U.S.C. § 405(g)). Where, as here, the Appeals Council denied review, the record is the information that was before the ALJ, the final administrative decisionmaker. *Matthews*, 239 F.3d at 594. It is error for the district court to consider new evidence where the claimant fails to demonstrate good cause to justify a remand for administrative consideration of any new evidence. *Cotton*, 2 F.3d at 696.

The standard for determining whether to remand a claim for consideration of additional information is set forth in the governing statute:

> The court ... may at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding....

*Sizemore*, 865 F.2d at 711 (quoting 42 U.S.C.A. § 405(g)). The Sixth Circuit has pointed out that "this provision was enacted, at least in part, to limit the discretion of federal judges to remand for reconsideration of new evidence." *Willis v. Secretary, HHS*, 727 F.2d 551, 554 (6th Cir. 1984) (per curiam) (citing cases). It is well

21

established that the party seeking remand bears the burden of showing that a

remand is proper.  *Sizemore*, 865 F.2d at 711; *Oliver*, 804 F.2d at 966 (citing *Willis*).

The Second Circuit has summarized the three-pronged requirement as

follows:

> [A]n appellant must show that the proffered evidence is (1) " 'new' and
> not merely cumulative of what is already in the record," and that it is
> (2) material, that is, both relevant to the claimant's condition during
> the time period for which benefits were denied and probative.  The
> concept of materiality requires, in addition, a reasonable possibility
> that the new evidence would have influenced the Secretary to decide
> claimant's application differently.  Finally, claimant must show (3)
> good cause for her failure to present the evidence earlier.

*Jones v. Sullivan*, 949 F.2d 57, 60 (2d Cir. 1991) (quoting *Tirado v. Bowen*, 842 F.2d

595, 597 (2d Cir. 1988)) (citations omitted).  *See also McCarty v. Commissioner*, 61

F.3d 903, 1995 WL 445728, at *3 (6th Cir. 1995) (TABLE, text in WESTLAW)

(applying *Jones* factors).

"The concept 'material' suggests that the new evidence must be relevant and

probative."  *Chaney v. Schweiker*, 659 F.2d 676, 679 (5th Cir. 1981).  Not every

discovery of new evidence, even if relevant and probative, will justify a remand, for

some evidence is of limited value, insufficient to justify the administrative costs and

delay of a new hearing.  *Id*.

In order for Thomas to satisfy her burden of proof as to materiality, she must

demonstrate that there was a reasonable probability that the Commissioner would

have reached a different disposition of the disability claim if presented with the new

evidence.  *Sizemore*, 865 F.2d at 711 (citing *Carroll*, 619 F.2d at 1162); *see also*

*McCarty*, 1995 WL 445728, at *3; *Jones*, 949 F.2d at 60.  The Commissioner argues that the additional evidence is cumulative, and does not offer any new insight into E.T.'s condition.  (Doc. 17, at 21-23.)  In fact, the Commissioner points out that much of the evidence tends to support the conclusion that T.E. was not disabled, and his condition may have improved.  *Id.* at 21.

Reviewing the evidence in question, the court agrees that it is merely cumulative to what already exists in the record.  Where the issue in question has already been fully considered, further evidence on that point is merely cumulative. *Carroll*, 619 F.2d at 1162.

One possible exception is the questionnaire on Medical and Functional Equivalence, completed by behavioral therapist Moore on December 18, 2012, which finds marked and extreme limitations in relevant domains.  (Tr., at 495-498). However, as the Commissioner points out, this document is "conclusory and unsupported."  (Doc. 17, at 23.)  The court agrees with the Commissioner's assessments of its shortcomings:

> . . . Ms. Moore did not complete the question that asked how long she had known Plaintiff and did not explain why she believed Plaintiff had marked and extreme limitations (Tr. 495).  Tellingly, Ms. Moore did not even state that she treated or evaluated Plaintiff, observed him in class, interviewed his mother, interviewed his teachers, or otherwise show that she had any consistent interaction with Plaintiff so as to support at her opinion (Tr. 495-96).

(Doc. 17, at 23.)  In light of these deficiencies, the court cannot find a reasonable possibility that the new evidence would have influenced the ALJ to decide

claimant's application differently. *Sizemore*, 865 F.2d at 711; *see also McCarty*, 1995 WL 445728, at *3; *Jones*, 949 F.2d at 60.

The claimant must show good cause for the court to order additional evidence to be taken before the Commissioner under the sixth sentence of 42 U.S.C. § 405(g). *Roberts v. Commissioner*, No. 1:10CV2783, 2012 WL 589486, at *10 (N.D. Ohio Jan. 25, 2012). Thomas notes that she was unrepresented (at the time of the hearing), and did not think to have the fourth grade teacher complete an updated questionnaire.[2] ([Doc. 16](), at 19.)

Administrative hearings on disability claims are not adversary proceedings, and the mere failure of a disability benefits claimant to be represented by counsel is not grounds for remand, absent other factors. *Truss v. Richardson*, 338 F.Supp. 741, 743 (E.D. Mich. 1971); *see also Hess v. Secretary, HEW*, 497 F.2d 837, 840 n.4 (3d Cir. 1974) (fact that claimant was not represented at hearing is not, in and of itself, ground for remand); *Kelley v. Weinberger*, 391 F.Supp. 1337, 1343 (D. Ind. 1974) (citing *Truss*) (same).

Although absence of counsel is not of itself good cause justifying a remand, where the absence of counsel is prejudicial to the claimant, a remand may be

---

[2] Notwithstanding her pro se status, there is evidence from school psychologists, T.E.'s second and third grade teachers, and other pertinent evidence to be found in the record. Of course, since the hearing took place in May 2012, it is likely that T.E. was still in third grade, and his fourth grade teacher would have nothing to report as of the hearing date. *See generally* tr., at 202, 204 (in Dec. 2012, teacher reports knowing T.E. "approx. 3 months").

justified. *Thomas v. Schweiker*, 557 F.Supp. 580, 582 (S.D. Ohio 1983) (citing cases). Thomas has not demonstrated that the absence of counsel at the hearing resulted in any prejudice to her.  Even assuming that Thomas' pro se status is relevant to the "good cause" inquiry, she was represented by counsel by the time her claim reached the Appeals Council, and the additional evidence was made available to the Appeals Council for its consideration.  *See, e.g.*, *Hollon ex rel. Hollon v. Commissioner*, 447 F.3d 477, 485 (6th Cir. 2006).  *See generally* doc. 16, at 16-19; doc. 17, at 19.

In addition, cumulative evidence does not constitute good cause for remand. *Carroll*, 619 F.2d at 1162 (citing cases).

For the reasons discussed above, Thomas has failed to carry her burden of showing that a remand is proper.  *Sizemore*, 865 F.2d at 711; *Oliver*, 804 F.2d at 966 (citing *Willis*).

SUMMARY

For the foregoing reasons, the court finds that the decision of the Commissioner is supported by substantial evidence.  The ALJ's determinations that T.E. has less than marked limitations in the domains of attending and completing tasks, interacting and relating to others, and caring for self, are supported by substantial evidence.  The record evidence as discussed in the ALJ's decision is such that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination.  The decision of the ALJ is AFFIRMED.


      IT IS SO ORDERED.

Dated:  <u>Mar. 30, 2015</u>          <u>/s/ Kenneth S. McHargh</u>
                                 Kenneth S. McHargh
                                 United States Magistrate Judge